The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you. Be seated. Good morning, everyone. The first case this morning is Tarver v. Department of Veterans' Claims. Thank you, and may it please the Court. The Court of Appeals for Veterans' Claims erred in this case when it determined that application of an amended Dependency and Indemnity Compensation Regulation, or DIC Regulation 3.22, was unlawfully retroactive. The Veterans' Court failed to apply this Court's test as that was an error, and similarly, same error occurred here and requires reversal of the Veterans' Court's opinion. Ms. Kidd-Miller, the government's position has taken account of the need to resolve issues in favor of the veteran whenever that's reasonably feasible? Yes, Your Honor. The claimant does raise an issue citing the Veterans' Court's decision in the case of Karnas, and in that case, which was a 1991 decision, the Court of Appeals for Veterans' Claims decided that when there's an intervening change in law, it's applicable only if that change is more favorable to the veteran than the previous law was. However, this Court overruled that case in 2003 in the Kuzma decision, and overruled that to the extent that Karnas conflicts with either decisions of the Supreme Court or decisions of this Court. But isn't that a matter of discretion, or at least there are elements of discretion in terms of, let's say, retroactive application of the law? And again, if that's sufficiently close to how things work to apply, then isn't that where, again, the weight to be given to the veteran, or in this case, the survivor, is important? Well, no, I would disagree that it is discretionary. For example, beginning in 1999, there was a Presidential General Counsel opinion from VA that said the hypothetical entitlement approach, which is the approach that was eliminated by the later veterans, the later amendment to the regulation. Beginning in 1990, the VA's General Counsel made clear that that kind of approach to proving a claim, which is what Mrs. Tarver was seeking to do, was not available. And the board is bound to follow those veterans, excuse me, the Department of Veterans Affairs General Counsel opinions. So beginning in 1990, that was not discretionary. The board needed to apply that interpretation as set forth in that opinion. The application, perhaps, once they have the General Counsel's opinion, and I appreciate that it was overturned later by the Court, but the General Counsel in issuing the opinion on this issue had a certain amount of discretion. Had the General Counsel gone the other way in his or her opinion, that would have been no more out of tune with the statute than the direction that the General Counsel went in. Is that correct? Sorry, I didn't mean to interrupt. Certainly, the interpretation of regulations, such as 3.22, is a matter that falls within some discretion of the Secretary. Now, however, that does not mean that the Secretary must always interpret every regulation in a way that grants the largest number of claims. The agency has the role of being the ultimate interpreter of the regulations where Congress has left something in the statute ambiguous, which is what we have here. This Court said in its Nova I decision that the phrase entitled to receive, which is what is at issue here, in the statute is ambiguous. And thus, the Court should defer to a reasonable agency interpretation. So the agency, perhaps, could have interpreted the regulation differently, but this Court found in a later Nova decision that its interpretation here was reasonable and that the Court will defer to that interpretation. And the proclaimant nature of the VA system coexists with that system of Chevron and Skidmore deference. In other words, the nature of the system itself does not somehow reduce the agency's ability to interpret the regulations. And here, as I said, the Court has previously found that the interpretation advanced by VA in 1990 and then maintained through even after Green was decided by the Veterans Court in Carpenter and in Wingo and then in its later amendments to the regulation, all were consistent. And that was a primary reason that part of that consistency as to why this Court found under application of the Princess Cruz's factors in Rodriguez that application of Amendment 322 is not impermissibly retroactive. Now, in this case, it is different from Rodriguez in the fact that the claimant in Rodriguez was filed before the decisions in Green, Carpenter, and Wingo, whereas in this case, the claim was filed after those decisions but prior to the time the regulation was revised. That's right. Now, it seems to me that that factual distinction doesn't have much of an effect on the first of the three Princess Cruz's tests but might have an effect on the second and the third. What are your comments on that? Well, I absolutely agree with respect to the first factor. And indeed, the first factor is a very objective inquiry. It looks at the nature of the law itself, which is absolutely no different in this case than it was in Rodriguez. As set forth in our brief, we do not believe that this factual distinction makes any difference for the second or third factors either. Does it not have an effect on at least the expectation? At the time Ms. Rodriguez filed, her claim to decisions had not been reached in Green, et cetera. But here, at least there were decisions that supported her position. So wouldn't that affect at least the third factor? Yes, it certainly affects the third factor. But the third factor still comes out in the government's favor. And this court found in Rodriguez that the third factor weighed heavily in favor of the Secretary. Now, the court observed even in Rodriguez that after Green was decided, that decision in Carpenter and Wingo may have breathed new life into Ms. Rodriguez's claims and her expectations about whether she was going to win her case. Now, the same could be said about Mrs. Tarver. Maybe these decisions breathed new life into her hopes for her claim. But the other considerations discussed by the court in Rodriguez are equally applicable here. For example, when looking at fair notice under the third factor, the court in Rodriguez specifically addressed some of the activities that occurred post-Green. Again, this Carpenter decision and this Wingo decision, and found that those were not enough to make this factor weigh in favor of the claimant. Now, before getting too far into application of these factors, I do just want to bring the court's attention to our prior request to have the case remanded to find an error in failure to apply the Princess Cruz's factors, and then remand to allow the Veterans Court to apply those factors in the first instance. And we do think that that is an ideal course for disposition of this case, because some of these factors, particularly the second and third one, could involve questions of application of law to fact, which of course fall outside this court's jurisdiction. But to the extent that the court does exercise jurisdiction to apply these factors, they all three weigh in favor of the Secretary. Turn to the second. Has the CAVC had any cases, or does it have now any cases before it, to your knowledge, that address this issue? That is to say, claims that come up in the interim between Green and the change in the regulation? I don't know the answer to that. This court has three other similar pending cases before it. So at least it can. The odd thing about this case, which of course is the reason that you've referred to the remand possibility, is that of course this case was decided by the CAVC before Rodriguez, and therefore the CAVC didn't have the benefit of the Rodriguez analysis. Rodriguez's fairly recent precedent, but it goes back I guess about a year. Is that my recollection correct? I believe Rodriguez was January of 08, so almost exactly a year. And do you know by any chance if any of the three other cases that are pending here would have been cases decided by the CAVC after January of last year? I believe that all three of the other pending cases are similar to this one, in that they were decided under the Veterans Court's own decision in Rodriguez, before this court overturned that decision. And I say that because all four cases, including this one, were stayed for some time in this court. And most recently, first pending a decision in a case called Vincent, which ultimately became moot because the claimant there was granted benefits under a different statute. And then they were all pended, rather stayed, pending Rodriguez. But I don't know whether the Veterans Court has addressed this and applied this court's decision in Rodriguez since then. That would seem to me to be pertinent to what we do with the case, wouldn't it? I mean, if they've already said, for example, Rodriguez has no effect on this case, what's the point of sending this case back? Well, the Veterans Court in this case did not have the benefit of the course. I understand. But if they've said in another case, which is indistinguishable from this one in all relevant respects, I don't know what they have. But if they have, wouldn't that indicate that it would sort of be pointless to send this case back for them to redo exactly what they've just done in this other hypothetical case decided after Rodriguez? Well, to the extent that it's the Veterans Court applying law to fact, then even if we have some expectation of what the Veterans Court is going to do, I think the proper course would be to go ahead and remand it. Turning back to the second factor, this factor also weighs in favor of the government as it did in Rodriguez. As the court explained in Rodriguez, Mrs. Rodriguez needed to point to something that she would have done differently had she known that Amendment 3.22 was going to apply to her claim instead of the Green decision or some other rule allowing hypothetical entitlement. And this factor focuses on primary conduct, not secondary litigation conduct. And the court made that clear in its Goodyear decision. Here, there was no primary conduct that Mrs. Tarver could have changed, just like Mrs. Rodriguez could point to no primary conduct. All of Mrs. Tarver's decisions here, whether to file her claim, what kind of strategy to pursue, whether to pursue the claim at all, were secondary litigation conduct, very different from the kind of primary conduct that we saw, for example, in Princess Cruz's, where a Cruz... At that point, and I assume that you've made it quite strongly, the ordinary person, particularly a spouse, soon to be a widow or with a disabled veteran to look after, doesn't keep track of the nuances of the change of law by the board or the Veterans Court or the Congress or anything else. One could perhaps have created such a record had one known what was going on, but it's very difficult to say that because there wasn't conspicuous reliance on anticipation of something or other that might happen after the veteran died, that this controls one's rights. Well, I would agree that probably the typical claimant is not necessarily reading Veterans Court's opinion and keeping up with changes in the law, but nonetheless, the primary conduct here... Well, arguably, there's no primary conduct in which Mrs. Tarver could have engaged. To the extent that the primary conduct of the veteran would be relevant, the kinds of things that would fall under primary conduct are things that would determine eligibility for the benefit. For example, Mr. Tarver, when he saw that his disability was worsening, filed a claim for a TDIU rating or a complete disability rating. Even while he may not have been tracking changes in the law, he and other veterans know when their disability is increasing in kind of additional benefits are available. That's really the relevant underlying conduct for this and really all DIC claims, the health of the veteran who is now deceased. Short of some kind of self-infliction of an injury, the veteran's health is what it is. It doesn't change or depend upon or rely upon in any way changes in the law. For that reason, the second factor also should come out in favor of the government here. Now, we've exhausted your time. We'll save a little time for rebuttal. Let's hear from the other side. Thank you. Mr. Stokes. Thank you, Your Honor. Good morning and may it please the court. The key difference in this case is when Mrs. Tarver filed her claim. She filed her claim after Green, Wingo and Carpenter had been decided and had been unappealed by the VA. As we argued in our brief, Karnas does apply to the extent that the most favorable version of the law that is in existence at the time that she files her claim should apply to her. But even if that were not the case, the Princess Cruz's factors, if this court would choose to go through those, still weigh in favor of Mrs. Tarver. The changed facts here compared with Rodriguez really don't affect the first Princess Cruz factor. Whether or not it was a substantial change, Your Honor? Correct. I believe that it does. In what way? This was substantial to her because she had an expectation at the time. That factor doesn't really go to her expectation. I'm sorry. The substantial change is that at the time, unlike Mrs. Rodriguez, at the time Mrs. Tarver filed her claim, she was entitled to pursue her claim under the hypothetical entitlement theory. And then it was adjudicated at the regional office and they applied the hypothetical entitlement to her case. They allowed her to, at that time, pursue her claim under hypothetical entitlement. And then by the time it got to the board, the law had changed. In other words, it couldn't be more substantial at the time she filed her claim. The interpretation of the law had changed. But the practical effect of that is, and I think that goes to the second problem that was discussed in Goodyear, which was cited by the government in its brief, whether she had a vested right. The parts of Princess Cruz's aren't necessarily totally distinct. There's some overlap there. And whether she had a vested right at the time she filed, she did. Her vested right was to pursue her DIC claim under everything that the law made available. She was on no notice whatsoever that there was going to be a change in the interpretation. And in fact, it had been interpreted. Green, Wingo, and Carpenter from the Veterans Court had interpreted 3.22 and had said that hypothetical entitlement was able to be pursued by a claimant. So as far as a substantial change, when she filed her claim, this was allowed. When it was adjudicated the first time, hypothetical entitlement was allowed. It wasn't until two years later, two years and some months later, that the board said, no, now it is no longer allowed because we changed our ruling in 2000. With respect to the second and third Princess Cruz's factors, what would Mrs. Tarver have done differently that she had known the effect of the 2000 amendment when she filed her claim? Well, what she would have done differently is a little bit of a nuanced question in a way that I alluded to during the government's presentation. Because this is a veteran's case, the veteran primarily has the responsibility to file the claim. And then the agency takes the ball from there and develops the claim. It should have developed the claim a little bit differently in that after it had adjudicated the first time, it did allow hypothetical entitlement and then pulled the rug out from the haystack and no longer allowed it. I would also point to- But that goes to the government's conduct, not her conduct. So my question to you is, what would she have done differently? But in this case, after she got the initial adjudication, she may have known to go out and get other evidence, to go out and more fully articulate her position under the 1310 entitlement. There are any number of things, but I would invite the court to not necessarily look at what her conduct would be differently because the burden shifts to the government so quickly in these cases. And also in Goodyear, the court discussed a vested right under the second prong, which was not necessarily addressed in Princess Cruz's, presumably because the court didn't need to get there. And in that case, in Goodyear, they talked about the fact that a vested right could be changed. And I think that that happened here. She did have a vested right. She had a vested right to pursue her claim under the hypothetical entitlement theory. And that vested right was taken from her, not after the first adjudication. You say she had a vested right. I mean, she had a vested right if you win this case. But it's hard for me to see why, where we are right now, she had a vested right. Isn't that sort of answering the question that we're required to address here? Your Honor, I think that it's an important question to ask because it's one of the factors. In what way is her right vested? At the time she was subject to alteration or loss by virtual change in law? I think that it was vested not only at the time she filed, but one month later, once the rating decision came down. And the rating decision did discuss hypothetical entitlement under 1318. I think that at that point, because that's what got appealed, her right became vested at that point. Because that's all she was on notice of that was going to be done in her case. So everything that she had to do when she went to the board for her hearing, which she did I think in 2002, she was under the presumption that 1318 and hypothetical entitlement 3.22 would be applied to her case. She had the vested right at that point to pursue her claim because the agency had already started down that road. Well, you know, the agency had, I mean, everyone was assuming at that point correctly, it's fair to say, that that was the state of the law and would continue to be the state of the law in the course of the adjudication of her claim. But I don't see where you go from that assumption to saying that it's vested, i.e. cannot be altered by a change in the law. Well, it's certainly the change in law, that's when you have to look, as I read the cases, you have to look to the other parts of the test. And the other parts of the test point so strongly in her favor that the right that she had at the time and that it was adjudicated, it ended up being such an unfair surprise to her and the change was so substantial. Let me ask you a variation of what we've been talking about. That is, are you contending that she relied to her detriment in some way on the decisions in Green, Carpenter, and Wingo? I think that at the time, I think that after the initial writing decision had been made, I think that it would be fair to presume that she was going to rely to her detriment on the fact that hypothetical entitlement was going to be pursued at her claim because the Well, I'm not sure I follow you there. My question is, did she act to her detriment and in what way did she act to her detriment in light of the decisions in Green, Carpenter, and Wingo? Again, Your Honor, I would... It seems to me that she filed a claim, the same claim she would have filed prior to those and I don't know that she would have done anything different, so I'm trying to find out in what way did this affect her or detrimentally affect her? Again, Your Honor, I would say that in the veteran's context, she does file her claim and then the agency is in charge after that and under Karnas and as was discussed at the end of the government's presentation, they are supposed to help her, they have a duty to assist, they have a duty to provide adequate notice, et cetera. Well, none of that changed though. They didn't apply the rule most favorable to her though. In that sense, their conduct changed because they waited with her claim. Because of the length of the VA process, they were allowed to wait until they could pull the rug out from under her and change the law. Well, you're not saying the agency is not entitled to take another look at the interpretation and of course, in this case, the agency's position right from the very outset almost was that this hypothetical application was not the correct rule. That was indeed the agency's position except for the fact that the veteran's court overruled the agency in effect and said, no, hypothetical entitlement is allowed. The agency never appealed those decisions. There was nothing- Oh, but the agency did put in process efforts to change the regulation, which ultimately they did. Yes, but they did that after Mrs. Tarver's claim had already been adjudicated once at the regional office. So in effect, they could wait until they could take adverse actions to her, which in the After the veteran's courts and this court's longstanding jurisprudence that says that the most beneficial reading of a statute or a regulation should be given to a claimant, that most beneficial reading was not given to her. That most beneficial reading was taken away from her. You mentioned the adjudication, the timing of the adjudication of her claim. Is your position with respect to Mrs. Tarver any different than it would be if she had filed her claim the day before the change in the VA's position? She had filed it- In other words, what was the date? 2000? She filed it in 1999, June or July, I think, correct? Right. June of 1999- June or something like that. June of 1999 and then July of 1999, the rating decision was applied, applying 1318 and 322. It was the next- It was the next month. Month. Yes. So they made the change- They made the change of- I thought the change was in 2000. I'm sorry, I misunderstood what you said happened in July. In July, there was an application- A rating decision. A rating decision, right. But the change in the regulation occurred in January of 2000 or something like that? That's correct, Your Honor. Okay. Suppose that the change in the regulation had occurred the day after she filed. Would this case be any different from the case that you're presenting to us? I would have to think about that. But my initial instinct would be there would be a difference. And that difference would be that they would change it the next day, assuming ... It's a bit unrealistic to put her in that position because there would be no way of her knowing that they were going to change that rule. But if they did change it- We have to assume that in actuality, she didn't know anything that was going on. Maybe she did, but we certainly can't assume that she was watching the Federal Register. If they did change the next day and VA had not undergone an adjudication under 1318 and 3.22, I do think that the facts would be a little bit different here because I think that at that point, she would have known that she could never pursue this claim. Whereas in this case, after the rating decision came down and it applied 1318, she had every right to expect ... And by the way, at the time, she was unrepresented by counsel. She was represented by the Texas Veterans Organization, but was unrepresented to my knowledge by counsel. She had every right to believe that the kind of evidence that she would submit ... And they send tons of letters to these veterans and say, submit evidence on this, this, and this. She had every right to believe that what she could submit and what she could talk about before the board, everything, she had every right to believe that hypothetical entitlement was still valid to her. Because she got this rating decision, it says right on there, 1318 and 3.22. She had no reason to know that a year after that or a couple months, six months after that, they were going to pull that away from her and then not tell her about it and then adjudicate saying, no, this is foreclosed to you. So I think that maybe ... And coming back to answer your question, I think that that would make a difference because she would have never known that they were going to adjudicate on this theory. Do you have ... This is a quick question. Do you have any problem with the concept of applying the three Princess Cruises factors in veterans cases? I think that the Princess Cruises factors ... I know that this court has done that. That is the law. In Rodriguez, they decided to apply ... This court decided to apply Princess Cruises. I think that it becomes difficult and it's a bit different in veterans cases as we pointed out in our opening brief, just because of the difference in the fact that cases that apply Princess Cruises tend to be in adversarial settings. This is a unique setting where it is at the agency level, non-adversarial. So Princess Cruises, to that extent, and in these circumstances, Princess Cruises, in my opinion, could offer some guidance, but may need to take that into account. The factors, the land graph factors, Goodyear, Princess Cruises, et cetera, need to take in ... I think that the jurisprudence would most benefit from understanding the difference of a veteran's circumstance. I don't think that that would have changed Mrs. Rodriguez's position at all, because in Mrs. Rodriguez's position, none of the three factors was she able to overcome at all. She was completely on notice the entire time that hypothetical entitlement was not going to be allowed. It wasn't until much later that hypothetical entitlement was found to be applicable to her case. Okay. Any more questions for Mrs. Stills? Any more questions? Thank you, Your Honors. Thank you. Ms. Kidmiller? Let's add two minutes for Ms. Kidmiller in rebuttal. Thank you, Your Honor. As an initial matter, a claimant does not have a vested right in VA benefits. For the claimant to say that she was somehow deprived of a vested right does not find support in this Court's precedent. As a clarification, Mrs. Tarver is correct that at the time the Board first adjudicated her claim in July of 1999, it did apply the hypothetical entitlement rule. However, it found as a factual matter that Mrs. Tarver had not met the requirements even under the hypothetical entitlement approach. Then when the case made its way onto the Board, the regulation had been amended by then, and the new regulation was applied and reached a similar outcome that Mrs. Rodriguez was not entitled to benefits. And she, but she doesn't have any... Ms. Tarver. Yes, I'm sorry. I'm confused. All right. That's right. Notably, Mrs. Tarver does not point to anything that she could have done differently had she known that 3.22 was going to be applied to her claim. And as this Court said in Rodriguez, that is a critical question that has to be answered under the Princess Cruz's test. What could the claimant have done differently? Mrs. Tarver seems to ignore this Court's opinion in Kuzma, which overruled Karnas to the extent that it's inconsistent with an opinion of the Supreme Court, which would be Landgraf in this case, or an opinion of this Court, which would be Princess Cruz's. Under Mrs. Tarver's approach, she would have this Court apply the rule most favorable to a veteran always, regardless of what the outcome would be under the Landgraf-Princess Cruz's analysis. In other words, it would forbid all retroactive application of any regulation. And that's simply not the law of this jurisdiction or the Supreme Court. So for these reasons and those in our brief, we ask that the Court reverse the decision of the Veterans Court below. Thank you, Ms. Kidmiller. Mr. Stills, the case is taken under submission.